**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, *et al.,* | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. TDC-23-02229 |
| RELIANCE FIRE PROTECTION, INC., | * * | |
| Defendant. | * * | |

\*\*\*\*\*\*

<u>**REPORT AND RECOMMENDATIONS**</u>

This "Report and Recommendations" addresses the "Motion for Entry of Default Judgment" and memorandum of law in support thereto, (ECF Nos. 14, 14-1), filed by the Plaintiffs, who are Trustees of the following: (a) National Automatic Sprinkler Industry Welfare Fund ("NASIWF"); (b) National Automatic Sprinkler Industry Metal Trades Welfare Fund ("Metal Trades Welfare Fund"); (c) National Automatic Sprinkler Local 669 UA Education Fund ("Local 669"); (d) National Automatic Sprinkler Industry Pension Fund ("NASIPF"); (e) National Automatic Sprinkler Industry Metal Trades Pension Fund ("Metal Trades Pension Fund"); (f) Sprinkler Industry Supplemental Pension Fund ("SISPF"); (g) International Training Fund ("ITF"); and (h) Road Sprinkler Fitters Local Union 669 Industry Advancement Fund Extended Benefit Fund and Work Assessments ("Advancement Fund"). Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, ("ERISA") to recover delinquent contributions and related relief from Defendant Reliance Fire Protection, Inc. ("Defendant").

Pursuant to 28 U.S.C. § 636, and Local Rule 301 (D. Md. 2023), the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 17). I do not believe that a hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, I ultimately recommend that Plaintiffs' "Motion for Entry of Default Judgment" be **GRANTED**, and that damages be awarded as set forth herein.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background: Agreements Related to Contributions to the NASI Funds

Plaintiffs are trustees and the authorized collection fiduciaries and agents of NASIWF, the Metal Trades Welfare Fund, Local 669, NASIPF, the Metal Trades Pension Fund, SISPF, ITF, and the Advancement Fund (collectively, "NASI Funds"), which were established pursuant to executed agreements binding the parties to terms of the Collective Bargaining Agreement and Restated Trust Agreements and amendments related thereto (collectively, "Trust Agreements") and the "Guidelines for Participation in the Sprinkler Industry Trust Funds" ("Guidelines"). (*See, e.g.*, ECF Nos. 1, p. 2; 14-4; 14-5, 14-6,14-7; 14-8, pp. 5-7, 21; 14-9, pp. 5-7, 21; 14-10, pp. 6, 10, 11-16, 18, 22; 14-11, pp. 5, 11-17, 19, 20; 14-12, pp. 5, 11-17, 19, 20; 14-13, pp. 1, 5, 10-16, 18, 26; 14-14, pp. 1, 12-21, 31, 32; 14-15, pp. 4, 5).

On January 4, 2016 the Defendant executed an "Assent and Interim Agreement" ("Agreement"), which bound it to the terms of a Collective Bargaining Agreement entered into between the National Fire Sprinkler Association, Inc. and Road Sprinkler Fitters Local Union 669 related to the NASI Funds. (ECF No. 14-3). By signing the Agreement, the Defendant acknowledged that it is bound by the terms and conditions of the Trust Agreements and Guidelines. (ECF No. 14-4). Specifically, the Defendant agreed to make monthly contributions to the NASI Funds on behalf of its union member employees, as well as to keep records and submit monthly

reports to the NASI Funds of the hours worked by those covered employees. (ECF Nos. 14-3; 14-4; 14-5, pp. 31-41; 14-6, pp. 31-34; 14-8, pp. 22-24; 14-9, pp. 22-24; 14-10, pp. 19-21; 14-11, pp. 20, 21; 14-12, pp. 20, 21; 14-13, pp. 19-21; 14-14, pp. 23-26, 58; 14-15, pp. 5, 6, 11, 15, 20-30).

The amounts of the monthly contributions to the NASI Funds were based on the hours worked by the Defendant's employees. (*See, e.g.,* ECF Nos. 14-5, pp. 31-39; 14-6, pp. 31-34, 58; 14-15, pp. 5, 11, 15-17). In order to help the Plaintiffs track the contribution amounts due to the NASI Funds, the Trust Agreements and Guidelines required the Defendant to provide monthly reports to the NASI Funds alongside all payments due. (*See, e.g.,* ECF Nos. 14-5, p. 39; 14-6, p. 34; 14-10, pp. 19-20; 14-11, p. 21; 14-12, pp. 19, 20; 14-13, p. 20; 14-14, p. 25; 14-15, pp. 5, 11, 14; 14-16).

If the Defendants failed to timely submit contributions and/or reports, the Trust Agreements, the Amendments thereto, and the Guidelines stipulated that various penalties may apply. In particular, the Plaintiffs may collect unpaid contributions and the following based on the delinquent contributions: (1) liquidated damages if the contributions are 60 days late or more; (2) varying rates of interest, compounded monthly; and (3) attorney's fees and costs incurred in collecting the delinquent amounts. (*See, e.g.,* ECF Nos. 14-5, pp. 39-41; 14-6, pp. 34, 35; 14-8, pp. 23-26, 37; 14-9, pp. 23-26; 14-10, pp. 21-23, 34; 14-11, pp. 22-25, 36; 14-12, pp. 21-23, 34; 14-13, pp. 21-24, 35; 14-14, pp. 26-29, 58-61; 14-15, pp. 6, 7, 11; 14-16).

### B.    Procedural Background

On August 15, 2023, Plaintiffs filed a Complaint against the Defendant alleging breach of the Trust Agreements and Guidelines established by the NASI Funds. (ECF No. 1, "Complaint"). Plaintiffs are seeking to collect unpaid contributions allegedly owed to the NASI Funds for work performed. Plaintiffs also seek "liquidated damages which become due subsequent to the filing of this action through the date of judgment, plus costs, interest, and

reasonable attorneys' fees." (Complaint, p. 5).

After having some difficulty effectuating service of process on the Defendant, [1] a "Declaration of Service of Process" was executed and filed by Charles W. Gilligan, Esq., Counsel for the Plaintiffs, on December 12, 2023. (ECF No. 11). Therein, Mr. Gilligan declares that on December 8, 2023 the Defendant was served with the Complaint, Summons, and supporting documents. (*Id.* at p. 2.). The Defendant failed to file a responsive pleading within the 21-day period required by Federal Rules of Civil Procedure 4 and 12, namely by December 29, 2023. On January 18, 2024, Judge Chuang issued an Order directing the Plaintiffs to file and serve on the Defendant a Motion for Clerk's Entry of Judgment within fourteen days of the Order. (ECF No. 12).

On February 2, 2024, Plaintiffs filed a "Motion for Clerk's Entry of Default," against the Defendant. (ECF No. 13). Also on February 2, 2024, Plaintiffs filed a "Motion for Entry of Default Judgment" (the "Motion"). (ECF No. 14). In support of the Motion, Plaintiffs appended a declaration from Anna E. Bosmans ("Ms. Bosmans"), Assistant Fund Administrator of NASI Funds and the following documents: (a) Trust Agreements and Amendments to the same; (b) the Guidelines; (c) agreements between the parties; (d) spreadsheets showing the amounts of contributions owed, the interest accrued, and the liquidated damages associated therewith for the period of June 2023, November 2023, and December 2023, as well as attorney's fees and costs; and (e) a declaration and documents from Charles W. Gilligan, Esq. related to attorney's fees and costs, (ECF Nos. 14-3 through 14-18).

---

[1] On November 16, 2023, Judge Chuang issued an order directing the Plaintiffs to show good cause for their failure to serve the Defendant within 90 days of filing the Complaint. (ECF No. 5). On November 28, 2023, Plaintiffs simultaneously filed a "Response to Order to Show Cause," detailing their failed efforts to effectuate service, and correspondence to the Clerk of the Court requesting reissuance of the Summons. (ECF Nos. 6, 7). On December 4, 2023, Judge Chuang issued an order granting the Plaintiffs' request and allowing them an additional 60 days to serve the Defendant. (ECF No. 9). On December 4, 2023, the Clerk of the Court reissued Summons as to the Defendant. (ECF No. 10).

On February 6, 2024, the Clerk of the Court entered default against the Defendant and issued a "Notice of Default," notifying the Defendant that it had "(30) days from this date to file a motion to vacate the order of default." (ECF Nos. 15, 16). To date, Defendant has not filed a responsive pleading.

## II.      DISCUSSION

### A.      Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

In this case, more than six months have passed since the Defendant was served the Complaint.  The Defendant has neither filed an opposition nor otherwise defended against this case.  Plaintiffs filed a declaration related to service of process, demonstrating that the Complaint was served via certified mail, restricted delivery, upon a representative authorized to accept it. (ECF Nos. 11, 13-1).  Therefore, I find that the Defendant has been available to respond or defend against this case, yet has failed to do so.  Thus, I recommend that default judgment be entered.

### B.      Damages

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6).  "With respect to a default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'"  *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011).   If the record supports the damages requested, however, then a court may award damages without a hearing.  *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required").  The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings.  Fed. R. Civ. P. 54(c).

*1. Contributions*

Plaintiffs assert that the Defendant failed to timely make contributions for the month of June 2023.  Plaintiffs further assert that the Defendant is delinquent in making contributions for the months of November 2023 and December 2023.  (ECF Nos. 14-3, pp. 3 - 5; 14-17).

I find that the applicable ERISA provisions, the Trust Agreements establishing the NASI Funds, and Agreement required the Defendants to have made timely contributions.  29 U.S.C. § 1145(1980) of ERISA requires that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

I find that the Plaintiffs are considered multi-employer plans, because they are multi-employer pension benefit plans, as defined by 29 U.S.C. §§ 1002(2) and (3). (*See* ECF No. 14-8, p. 5). In addition, the record demonstrates that the Defendant, through its agent/representative, Cameron Spence, is a party to the Agreement binding it to the Trust Agreements and Guidelines governing the NASI Funds. (ECF No. 14-4).  By signing the Agreement, the Defendant accepted the terms therein and the terms of the Trust Agreements and Guidelines.  (*Id.*).   I further find that the Trust Agreements and Guidelines governing the NASI Funds obligated the Defendant to make contributions based upon payroll generated for each covered employee. (*See, e.g.*, ECF Nos. 14-5, pp. 31-39; 14-6, pp. 31-34, 58; 14-15, pp. 5, 10, 15-16).

In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action.  *See* 29 U.S.C. §§ 1132, 1145.   If a plaintiff prevails in its action, a district court is then required to award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) "such other legal or equitable relief as the court deems appropriate."   29 U.S.C. § 1132(g)(2).

7

The Supreme Court has explained that a plan's ability to bring forth legal action as "an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). In interpreting a collection action arising under 29 U.S.C. § 1145, the Fourth Circuit has reasoned that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents," because this "puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). I find that Plaintiffs have the right to collect unpaid contributions from the Defendant.

### 2. Specific Recovery Sought[2]

As permitted by 29 U.S.C. § 1132(g), Plaintiffs seek the following for the NASI Funds: (1) $95,728.47 for delinquent contributions for November - December 2023; (2) $23,749.51 in liquidated damages, which represents 20% of late contributions and delinquent contributions due and owing for June, November, and December 2023; (3) $1,916.77 in accrued interest assessed at the rate of 12% *per annum*; (4) $947.00 in costs, and (5) $1,935.00 in attorney's fees. (ECF Nos. 14-1, 14-3, 14-17).

I reviewed all of the Plaintiffs' supporting documentation to make my findings and recommendations.

### a. Unpaid Contributions

Plaintiffs assert that the Defendant owes contributions in the amount of $95,728.47 for the NASI Funds. (ECF Nos. 14-1, p. 2; 14-3). I find that Plaintiffs' request for unpaid contributions

---

[2] Plaintiffs advise that, subsequent to the filing of the Complaint, "the Defendant submitted its reports and paid the contributions owed for the months of June and July(sic) 2023." (ECF No. 14-3, p. 3). However, in relation to the Defendant's contributions for the month of June 2023, the Plaintiffs are still seeking "liquidated damages and interest which have been assessed on those late contributions in accordance with the Trust Agreements and Guidelines." (ECF No. 14-3, p. 4).

is supported by exhibits and a declaration from Ms. Bosmans, (ECF Nos. 14-3, 14-16, 14-17).  Ms. Bosmans reviewed the Trust Agreements and Guidelines, and, in accordance with them, calculated the total amount of contributions owed for each month to NASI Funds by reviewing the reports previously submitted by the Defendant.  (ECF No. 14-3, pp. 3, 4).   I also credit Plaintiffs' spreadsheet, which provides a monthly breakdown of the contributions owed to the NASI Funds. (ECF No. 14-17).

The Defendant has not refuted Plaintiffs' evidence because it failed to file a responsive pleading.   Thus, I recommend an award to the Plaintiffs for unpaid contributions in the amounts of $95,728.47 for the NASI Funds for November - December 2023.

b.   Accrued Interest on Paid and Unpaid Contributions

Plaintiffs claim accrued interest in the amount of $1,916.77 for the NASI Funds.  (ECF No. 14-1, p. 2). The ability to assess interest on late contributions is found in 29 U.S.C. § 1132(g)(2)(C)(i), which states that "interest on unpaid contributions shall be determined by using the rate provided under the plan."

The Trust Agreements for NASI Funds establish guidelines for computing interest on untimely paid contributions.  Interest will be assessed  at the rate of 12% *per annum* on paid contributions "through the date of payment."  (ECF Nos. 14-1, p. 2; 14-3, p. 4; 14-17).  Here, there is undisputed evidence that the Defendant's failed to timely pay contributions for the month of June 2023.  Therefore, Plaintiffs are entitled to interest assessed on the paid total.

In addition, the Trust Agreements for NASI Funds establish guidelines for computing interest on unpaid contributions.  Interest will be assessed  at the rate of 12% *per annum*, compounded monthly "from the date of delinquency to the date of payment."  (ECF Nos. 14-1, p. 2; 14-3 p. 4; 14-17).  Here, there is undisputed evidence that the Defendant's unpaid contributions for the months of November and December 2023 are delinquent.  Therefore, Plaintiffs are entitled

to interest assessed on the unpaid total for these months.

Accordingly, I recommend that the Court award Plaintiffs accrued interest in the amount of $1,916.77 for June, November, and December 2023, plus any further accrued interest consistent with the NASI Funds' Trust Agreement and Guidelines for computing interest on unpaid contributions upon date of payment. *See* 29 U.S.C. § 1132(g)(2)(E) ("the court shall award such other legal or equitable relief as [it] deems appropriate").

c.   Liquidated Damages

Plaintiffs request liquidated damages in the amount of $23,749.51 associated with June, November and December 2023.   (ECF Nos. 14-3, pp. 4, 5; 14-17).

Under ERISA, a prevailing party shall be entitled to liquidated damages, which "can be awarded at the greater amount of either: (1) the [accrued] interest on delinquent contributions; or (2) the 'liquidated damages provided for under the plan and not in excess of 20 percent' of the delinquent contributions." *Trustees of the Nat'l Elec. Benefit Fund v. Loga Holding, LLC*, Civ. No. PWG-21-2917, 2022 WL 3100759, at *3 (D. Md. Aug. 4, 2022) (citing 29 U.S.C. § 1132(g)(2)(C)(i)-(ii)).

Here, for the NASI Funds, the record reflects that Plaintiffs are seeking $23,749.51 in liquidated damages, per the rate set forth in the Trust Agreements.  (ECF Nos. 14-3, pp. 4, 5; 14-17).  I compared the total amount of liquidated damages assessed to the total amount of unpaid contributions.  I find that the requested amount of liquidated damages, at the rate set forth in the Trust Agreements, do not exceed what is permitted by statute, as the Trust Agreements allow for a recovery of 20% of the delinquent contributions.  (*Id.*).

I find that Plaintiffs' damages request is supported by exhibits and a declaration from Ms. Bosmans. (ECF Nos. 14-3 - 14-16).  Ms. Bosmans reviewed the Trust Agreements and Guidelines, and, in accordance with them, calculated the total amount of liquidated damages owed for each

month to NASI Funds by reviewing the reports previously submitted by the Defendant.  (*Id.*).  I also credit Plaintiffs' spreadsheet, which provides a monthly breakdown of the liquidated damages owed to the NASI Funds.  (ECF No. 14-17).

As such,  I recommend and award liquidated damages to the Plaintiffs in the amount of $23,749.51 for the NASI Funds.

### d.   Attorney's Fees and Court Costs

The statute, 29 U.S.C. § 1132(g)(2)(D), mandates that a district court award "reasonable attorney's fees and costs of the action," where, as here, the requesting party prevails.  In determining an award of attorney's fees, the "lodestar" approach, which is examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the most appropriate method for the Court to utilize.  *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Ideal Insulation, Inc.*, 2011 WL 5151067, at *6; *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Professional Painting Inc.*, Civ. No. WDQ-11-172, 2011 WL 3744123, at *7 (D. Md Aug. 23, 2011); *see also Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).

A plaintiff "must show that the number of hours for which he [or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, Civ. No. NKM-07-65, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008). Appendix B of this district's "Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" (D. Md. 2023) ("Local Rules") provides, in pertinent part, that lawyers admitted to the Bar for twenty years or more may reasonably bill $300-475/hour, and paralegals may reasonably bill $95-150/hour.  *See* Local Rules, App'x B, at 3.e, f.

In this case, Plaintiffs request payments in the amounts of $1,935.00.  In support, Plaintiffs offer a declaration from Charles W. Gilligan, Esq. a partner with the law firm of O'Donoghue & O'Donoghue.  (ECF No. 14-18).  Mr. Gilligan, who has been a member of the Bar for more than thirty-seven years, submits a chart and invoices related to legal costs.  (ECF Nos. 14-18 - 14-21). The chart reflects that from August 14, 2023 through February 1, 2024, he billed Plaintiffs a total of 1 hour of work for a total fee is $360.00.[3]  (*See* ECF No. 14-19).

In addition, Teresa Butler, a paralegal with the law firm of O'Donoghue & O'Donoghue, performed paralegal work under the supervision of Mr. Gilligan.  Ms. Butler has a degree in paralegal studies and has been employed as a paralegal for more than thirty-eight years.  (ECF No. 14-18).  Mr. Gilligan's chart reflects that Ms. Butler billed the Plaintiffs 10.5 hours of work at an hourly rate of $150.00, for a fee of $1,575.00.  (*See* ECF No. 14-19).

Mr. Gilligan is claiming a total of $1,935.00 for attorney's fees and paralegal-related fees. According to Mr. Gilligan, the hours generated relate to research, review, correspondence, and preparing the Complaint and default judgment motions.  (*Id.*).  Both Mr. Gilligan's and Ms. Butler's hourly rates fall within the suggested range.  See Local Rules, App'x B, at 3.e., f.  I find that a total of 11.5 hours is a reasonable amount of time expended for the work performed by Mr. Gilligan and Ms. Butler.  In sum, I find that $1,935.00 for attorney's fees and paralegal-related fees is reasonable.

In addition, Plaintiffs seek court costs of $402.00 (court filing fee) and $545.00 (private process server fees) for total costs in the amount of $947.00. (ECF No. 14-18).  In support of the request, Plaintiffs provide proof of payment of court costs and invoices from the process server.

---

[3] On August 14, 2023, Mr. Gilligan billed Plaintiffs for 0.25 hours of work at an hourly rate of $360.00, for a fee of $90.00.  On November 27, 2023, he billed Plaintiffs for 0.50 hours of work at an hourly rate of $360.00, for a fee of $180.00.  Lastly, on February 1, 2024, he billed Plaintiffs for 0.25 hours of work at an hourly rate of $360.00, for a fee of $90.00.  (*See* ECF No. 14-19).

(ECF Nos. 14-20, 14-21).  I find that this type of cost is ordinarily charged to a client and is reasonable out-of-pocket expense.  In addition, by statute, Plaintiffs are entitled to such court costs. *See* 29 U.S.C. § 1132(g)(2)(D).

Accordingly, I recommend that the Court award $1,935.00 in attorney's fees and $947.00 in court costs.

## III.    CONCLUSION

In sum, I respectfully recommend that the Court, **GRANT** Plaintiffs' "Motion for Entry of Default Judgment" against the Defendant.  (ECF No. 14).  I further recommend that the District Court enter judgment in favor of the Plaintiffs in the following amounts:

1) Unpaid contributions in the amount of $95,728.47;

2) Interest in the amount of $1,916.77 plus interest accrued at the rate of 12% *per annum* upon the date of payment;

3) Liquidated damages in the amount of $23,749.51;

4) Attorney's fees of $1,935.00; and

5) Court costs in the amount of $947.00.

Dated: June 24, 2024

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge